**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**IN THE MATTER OF THE REQUEST FOR**

**EXTRADITION OF**                                      Case No. 6:05-mc-64-Orl-KRS

**ROSTISLAV KONEČNÝ**

---

**ORDER**

This cause came on for consideration on the complaint filed by the United States requesting this Court to certify an extradition request for Rostislav Konečný, a citizen of the Czech Republic, on behalf of the Czech Republic, pursuant to the Multilateral Treaty between the United States and Czechoslovakia for the extradition of fugitives from justice, July 2, 1925, 44 Stat. 2367 (the Treaty).[1] Doc. No. 2. I have jurisdiction over this matter pursuant to 18 U.S.C. § 3184 and Middle District of Florida Local Rule 6.01(c)(9).

**I.      PROCEDURAL HISTORY.**

On December 21, 2000, Konečný was adjudged guilty of committing several offenses in violation of the Czech Criminal Code following a trial before the Municipal Court in Prague.[2] *See* Appleton Documents; Statement of Pavla Augustinová, Presiding Judge for the Municipal Court in Prague; Verdict in the Name of the Republic, decided December 21, 2000 (Verdict). Specifically,

---

[1] In 1993, Czechoslovakia split to form the Czech Republic and the Republic of Slovakia. *See Kastnerova v. United States*, 365 F.3d 980, 982 (11th Cir.), *cert. denied*, 541 U.S. 1090 (2004).

[2] The United States has submitted several documents certified by Richard H. Appleton, Consul General of the United States, in support of its extradition request. In addition, the United States has submitted several documents along with the Declaration of Kenneth Propp, Attorney Advisor, Office of the Legal Advisor for the Department of State. Konečný does not challenge the authenticity of these documents. I will refer to these documents throughout the course of this order as Appleton Documents or Propp Documents, with citation to the specific documents at issue thereafter.

Konečný was convicted of violating the following provisions of the Czech Criminal Code: (1) Section 250a(1) and (5) (insurance fraud); (2) Section 10(1)(b) (instigating another person to commit a crime) in connection with Section 158(1)(a) (abuse of powers by a public official); (3) Section 10(1)(c) (assisting another person in committing a crime) in connection with Section 250a(1) and (3) (insurance fraud); and (4) Section 158(1)(a) (abuse of powers by a public official) in connection with Section 160(2) and 3(b) (bribe-taking). Appleton Documents; Statement of Judge Augustinová; Verdict; *see also* Propp Documents; Request for extradition from the Ministry of Justice of the Czech Republic, dated January 6, 2004.

Konečný was sentenced to an aggregated punishment of six years and six months' imprisonment. Konečný was present throughout the duration of the trial; however, he fled the Czech Republic after the verdict was rendered. His appeal to the High Court in Prague was heard *in absentia*, although he was represented by counsel throughout the appellate process. *See* Appleton Documents; Statement of Judge Augustinová. Konečný's sentence became final on October 24, 2001. *See* Appleton Documents; Declaration of Judge Augustinová; Resolution of the High Court in Prague; Propp Documents; Request for extradition from the Ministry of Justice of the Czech Republic, dated January 6, 2004.

In March 2001, Czech authorities learned that Konečný had entered the United States. Thereafter, Interpol notified the Czech authorities that Konečný was residing in Orlando, Florida. *See* Appleton Documents; Arrest Warrant signed by Judge Augustinová, dated February 19, 2003 (Arrest Warrant). The Ministry of Justice of the Czech Republic subsequently contacted the United States and requested Konečný's extradition. On May 12, 2005, the United States filed a criminal complaint seeking Konečný's extradition and the issuance of an arrest warrant. Doc. No. 2. A warrant was issued for Konečný's arrest and he was brought before the Court for his initial

appearance on May 23, 2005. A detention hearing was held on May 25, 2005, at which time Konečný was ordered to be detained pending further proceedings. Doc. Nos. 9 & 12.

Thereafter, the United States presented evidence from the Czech Republic to support its extradition request. Doc. No. 15. On June 23, 2005, and July 1, 2005, I held hearings on the extradition complaint pursuant to 18 U.S.C. § 3184. Doc. Nos. 16 & 18.

## II.   UNDERLYING FACTS.

According to the certified documents submitted by the United States on behalf of the Czech Republic, Konečný conspired with former police officers, Jiří Hejtmánek and Martin Chocholouš, to commit insurance fraud. *See* Appleton Documents; Verdict; Resolution of the High Court in Prague.[3] Specifically, Konečný, a former police offer himself, acquired certain identifying documents from several automobile owners. Konečný then presented these documents to Hejtmánek and Chocholouš, police inspectors in Holešovice and Bohnice, after which they proceeded to file false police reports concerning fictitious traffic accidents that purportedly took place in Prague between May 15, 1998 and December 21, 1999. Konečný was allegedly involved in many of the accidents. Konečný and his accomplices managed to collect in excess of 1,000,000.00 Korun (CZK), the currency of the Czech Republic, from various insurance companies by filing false insurance claims based on the fictitious accident reports. Appleton Documents; Verdict; Resolution of the High Court in Prague.

In addition, on January 14, 1999, Konečný and David Brumla faked a traffic accident by switching the license plate of a previously damage vehicle with that of an undamaged vehicle of the same make and model. Brumla then reported the accident to the police, after which he filed an

---

[3] It appears that at least one other former police officer, Rudolf Pekárek, participated in the scheme. *See* Appleton Documents; Verdict.

insurance claim as the alleged driver of the vehicle. Brumla and Konečný received 156,342.00 CZK in insurance proceeds based on the false claim. *See* Appleton Documents; Arrest Warrant. Thereafter, the pair perpetrated a similar scheme. This time Brumla claimed the vehicle in question had been stolen. Brumla and Konečný received 140,182.00 CZK in insurance proceeds based on the false theft claim. *Id*.

In 1998, while on patrol, Konečný pulled over a vehicle operated by Kamil Houdek. Once Konečný discovered that Houdek had consumed an intoxicating beverage, he directed Houdek to sign some forms "he wanted to use as evidence that payments worth several thousands of crown were paid." *Id*. at 6. Konečný informed Houdek that he would confiscate his license if he did not sign the forms. Konečný later contacted Houdek and directed him to fill out a fictitious accident report. Konečný told Houdek that he would discard the forms he had previously signed if Houdek filled out the fictitious report. *Id*.

Based on these incidents, Konečný was convicted of: (1) insurance fraud (nine counts); (2) instigating another person to be a party to an offense involving the abuse of powers by a public official (eleven counts); (3) assisting another person in filing a false insurance claim (one count); and (4) abuse of powers by a public official concurrently with the offense of bribe-taking (one count). Appleton Documents; Verdict; Resolution of the High Court in Prague; Arrest Warrant.

### III. TREATY.

The Treaty at issue in this case was signed on July 2, 1925, and entered into force on March 29, 1926. 44 Stat. 2367.[4] It remains in full force and effect as between the United States

---

[4] A supplementary extradition treaty enlarging the list of extraditable offenses was signed in Washington on April 29, 1935, and entered into force on August 28, 1935. 49 Stat. 3253.

and the Czech Republic.  18 U.S.C. § 3181; *Kastnerova*, 365 F.3d at 986-87; Propp Documents; Declaration of Kenneth Propp.

## IV.     STANDARD OF REVIEW.

"An extradition treaty creates in a foreign government the right to demand and obtain extradition of an accused criminal. . . . Absent a treaty, the federal government lacks the authority to turn the accused over to the foreign government." *United States v. Fernandez-Morris*, 99 F. Supp. 2d 1358, 1360 (S.D. Fla. 1999) (citation omitted).

When a foreign government requests extradition of a fugitive pursuant to a treaty with the United States, the Court must determine whether:  (1) criminal charges are pending in the requesting state; (2) the offenses for which extradition is sought are included in the treaty as "extraditable offenses"; and (3) probable cause exists to believe that the offenses charged were committed and that the person before the Court committed them.  18 U.S.C. § 3184; *see also Fernandez-Morris*, 99 F. Supp. 2d at 1360-01.

The inquiry will vary depending on the language of the particular treaty at issue. "[Extradition treaties] either list the offenses for which extradition shall be granted or designate a formula by which to determine extraditable offenses." *United States v. Herbage*, 850 F.2d 1463, 1465 (11th Cir. 1988) (internal quotation marks and citation omitted); *see also* M. CHERIF BASSIOUNI, INTERNATIONAL EXTRADITION: UNITED STATES LAW AND PRACTICE 473-74 (4th ed. 2002) (BASSIOUNI, INTERNATIONAL EXTRADITION).  If the treaty specifically enumerates the offenses for which extradition may be sought, the Court must first determine whether the offenses charged are included in the treaty.  BASSIOUNI, INTERNATIONAL EXTRADITION at 473-74.

In addition, most treaties contain a dual criminality requirement.  *Herbage*, 850 F.2d at 1465.  "In short, an individual will be extradited under a treaty containing a [dual] criminality

-5-

provision only when his actions constitute an offense in both the requesting and requested states." *Id*. Acts are considered criminal in the United States if they would be unlawful under federal statutes, the law of the state where the accused is found, or by a preponderance of the states. *Wright v. Henkel*, 190 U.S. 40, 61 (1903).

"'[T]he requesting state, which secures the surrender of a person, can prosecute that person only for the offense[s] for which he or she was surrendered by the requested state or else must allow that person an opportunity to leave the prosecuting state to which he or she had been surrendered.'" *United States v. Lehder-Rivas*, 955 F.2d 1510, 1519-20 (11th Cir. 1992) (quoting *Herbage*, 850 F.2d at 1465). This requirement is often referred to as the "specialty principle."

The standard federal courts are required to apply when interpreting the provisions of an extradition treaty is well settled:

> In choosing between conflicting interpretations of a treaty obligation, a narrow and restricted construction is to be avoided as not consonant with the principles deemed controlling in the interpretation of international agreements. Considerations which should govern the diplomatic relations between nations, and the good faith of treaties, as well require that their obligations should be liberally construed so as to effect the apparent intention of the parties to secure equality and reciprocity between them. *For that reason if a treaty fairly admits of two constructions, one restricting the rights which may be claimed under it, and the other enlarging it, the more liberal construction is to be preferred.*

*Factor v. Laubenheimer*, 290 U.S. 276, 293-94 (1933) (emphasis added).

The Federal Rules of Criminal Procedure and the Federal Rules of Evidence are expressly inapplicable to extradition proceedings. Fed. R. Crim. P. 1(a)(5); Fed. R. Evid. 1101(d)(3). Thus, hearsay and otherwise excludable evidence is admissible. *United States v. Peterka*, 307 F. Supp. 2d 1344, 1349 (M.D. Fla. 2003). If properly certified, "[d]epositions, warrants or other papers or copies thereof" offered by the requesting state in support of its extradition request must be accepted and admitted as evidence. 18 U.S.C. § 3190. In addition, "[a] fugitive's right to present

evidence at the hearing on extradition is severely limited. He or she may only present evidence that explains rather than contradicts the demanding country's proof." *Fernandez-Morris*, 99 F. Supp. 2d at 1366.

Once a court determines that a fugitive is extraditable, the final decision to surrender the fugitive rests with the Secretary of State. 18 U.S.C. § 3186. Humanitarian issues raised by an extraditee concerning, among other things, the conditions of confinement upon surrender to the requesting state, are within the exclusive province of the executive branch. *See, e.g., Escobedo v. United States*, 623 F.2d 1098, 1107 (5th Cir. 1980). This principle, which is often referred to as the rule of non-inquiry, is paramount to the effective administration of international relations.

It is well established that a certification of extraditability by the court is not a final order and no direct appeal lies from such a decision. *Kastnerova*, 365 F.3d at 984. Review is available only by way of a petition for habeas corpus. *Id*.

## V. ANALYSIS.

### A. Sufficiency of the Extradition Complaint.

Konečný argues that the complaint filed by the United States is deficient because it does not specify with particularity each enumerated provision of the Treaty upon which the government relies in support of the extradition request.[5] An extradition complaint need not contain the precision nor the formality of a criminal indictment. *See, e.g., Yordi v. Nolte*, 215 U.S. 227, 230 (1909); *In re Extradition of Ramos Herrera*, 268 F. Supp. 2d 688, 691-92 (W.D. Tex. 2003). Nevertheless, "[t]he complaint must provide sufficient information as to inform the fugitive of the

---

[5] As discussed in more detail *infra*, the Treaty specifically enumerates each offense for which extradition may be sought.

charges against him." *Id*. at 691.  Hence, a standard extradition complaint will ordinally contain the following information:

1. The name of the relator;

2. The reference to a treaty in force;

3. The allegation than an extraditable offense under the treaty was committed;

4. The allegation that the offense constitutes a crime under United States federal law or the laws of the state wherein the district court is located;

5. Where applicable, the non-applicability of a treaty defense;

6. A summary of the factual circumstances of the alleged offense;

7. A showing that "probable cause" exists that the relator is the person charged or convicted, and has committed the crime charged or for which he was convicted.

BASSIOUNI, INTERNATIONAL EXTRADITION at 764-65 (footnotes omitted). Moreover, any irregularity in the complaint may be corrected through the evidence presented at the extradition hearing. *Yordi*, 215 U.S. at 232.

The complaint submitted by the United States in this matter substantially conforms with each of these requirements. Regardless, any deficiencies contained in the complaint were cured during the extradition hearings that took place in this case. Konečný was advised of the United States' position with respect to each enumerated provision in the present Treaty at the first hearing that was held in this matter. Doc. No. 16. That hearing, which was held on June 23, 2005, was continued until July 1, 2005. Doc. No. 18. Thus, Konečný had ample notice of the charges against him.

    B.    <u>Charges Pending in the Czech Republic</u>.

The record contains both the charging document and the verdict rendered thereon. There is, therefore, no issue regarding whether Konečný has charges pending against him in the Czech

Republic. The extradition documents indicate that Konečný has a right to a new trial in the event he is extradited to the Czech Republic. *See* Propp Documents; Request for extradition from the Ministry of Justice of the Czech Republic, dated January 6, 2004. At the extradition hearing, Konečný asserted his right to a new trial in the Czech Republic if he is extradited.

    C.    <u>Extraditable Nature of the Offenses</u>.

        1.    *Enumerated Offenses*.

The Treaty in this case specifically enumerates the offenses for which extradition may be sought. The extraditable offenses enumerated in the Treaty are set forth in Article II, which provides, in relevant part, as follows:

> Persons shall be delivered up according to the provisions of the present Treaty, who shall have been charged with or convicted of any of the following crimes or offenses:
>
> . . .
>
> 14. Embezzlement or criminal malversation committed within the jurisdiction of one or the other party by public officers or depositaries, where the amount embezzled exceeds one hundred dollars or the Czechoslovak equivalent.
>
> . . .
>
> 18. Obtaining money, valuable securities or other property by false pretenses or receiving any money, valuable securities or other property knowing the same to have been unlawfully obtained, where the amount of money or the value of the property so obtained or received exceeds one hundred dollars or the Czechoslovak equivalent.
>
> . . .
>
> 20. Fraud or breach of trust by a bailee, banker, agent, factor, trustee, executor, administrator, guardian, director or officer of any company or corporation, or by any one in any fiduciary position, where the amount of money or the value of the property misappropriated exceeds one hundred dollars or the Czechoslovak equivalent.
>
> . . .

>       The extradition is also to take place for participation in any of the aforesaid crimes as an accessory before or after the fact or in any attempt to commit any of the aforesaid crimes; provided such participation or attempt be punishable by imprisonment by the laws of both Contracting Parties.

44 Stat. 2367.

I will review each offense for which Konečný's extradition is sought to determine whether it falls within one of the enumerated extraditable offenses.

### *Insurance Fraud*

This offense falls within the ambit of Article II, No. 18 (obtaining money, valuable securities or other property by false pretenses). Based on the currency exchange rate cited at the hearing, the value of the property involved in the insurance fraud "exceeds one hundred dollars or the Czechoslovak equivalent." *Id.*

### *Instigating Another Person to be a Party to an Offense Involving the Abuse of Powers by a Public Official*

A liberal construction of Article II, No. 14, brings the offense of abuse of powers by a public official within the purview of criminal malversation, as that term is ordinarily understood in extradition jurisprudence. As the United States Court of Appeals for the Fifth Circuit has noted:

> Criminal malversation includes a broad category of corrupt official practices. . . . The Oxford English Dictionary lists two current meanings: "corrupt behavior in an office, commission, employment, or position of trust"; and "corrupt administration of something" . . .
>
> Black's Law Dictionary sets out the accepted definition:
>
> "In French law, this word is applied to all grave and punishable faults committed in the exercise of a charge or commission, (office,) such as corruption, exaction, concussion, larceny."

*Jimenez v. Aristeguieta*, 311 F.2d 547, 562-23 (5th Cir. 1962) (citations omitted); *accord Matter of Extradition of Rabelbauer*, 638 F. Supp. 1085, 1088 (S.D.N.Y. 1986) ("Accordingly, it is the

conclusion of the Court that 'criminal malversation,' as used in paragraph 14, includes official corruption. . . . Thus, the offenses of bribery or inducement to abuse authority are within the purview of the Treaty . . .").[6]  Based on the currency exchange rate cited at the hearing, the value of the property involved in this offense "exceeds one hundred dollars or the Czechoslovak equivalent."

In addition, Article II, No. 20 offers an independent basis for extradition on the offense of abuse of powers by a public official.  A police officer occupies a fiduciary position and procuring information to be used in false accident reports represents a breach of that trust.  *See, e.g., Rabelbauer*, 638 F. Supp. at 1089.

The offense of instigating another person to be a party to an offense involving the abuse of powers by a public official falls under the "catch-all" provision set forth in the last paragraph of Article II of the Treaty, provided that it is punishable by imprisonment by the laws of both the United States and the Czech Republic. Article II ("The extradition is also to take place for participation in any of the aforesaid crimes as an accessory before or after the fact or in any attempt to commit any of the aforesaid crimes; provided such participation or attempt be punishable by imprisonment by the laws of both Contracting Parties.").  Both the Czech Republic and the United States recognize this offense.  *See* Czech Criminal Code § 10; 18 U.S.C. §§ 2(a) (aiding and abetting).

---

[6] I note that the language contained in the treaty provisions at issue in *Jimenez* and *Rabelbauer* is nearly identical to the language contained in Article II, No. 14 of the present Treaty. *Jimenez*, 311 F.2d at 562; *Rabelbauer*, 638 F. Supp. at 1087.

*Assisting Another Person in Filing a False Insurance Claim*

The offense of assisting another person in filing a false insurance claim also falls under the "catch-all" provision set forth in the last paragraph of Article II of the Treaty.  Both the Czech Republic and the United States recognize this offense.  *See* Sections 10 & 250a of the Czech Criminal Code; Fla. Stat. §§ 777.011 (aiding and abetting), 817.234 (false and fraudulent insurance claims).

*Abuse of Powers by a Public Official Concurrently With the Offense of Bribe-Taking*

As noted above, abuse of powers by a public official is covered by Article II, No. 14.  The offense of bribe-taking also falls within the purview of Article II, No. 14.  *Rabelbauer*, 638 F. Supp. at 1087-88.

      2.    *Dual Criminality*.

The Treaty contains a dual criminality provision.  Specifically, Article I provides, in relevant part, as follows:

> It is agreed that the Government of the United States and the Government of [the Czech Republic] shall, upon requisition duly made as herein provided, deliver up to justice any person, who . . . may have been convicted of any of the crimes or offenses specified in Article II of the present Treaty . . . provided that such surrender shall take place only upon such evidence of criminality, as according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial if the crime or offense had been there committed.

44 Stat. 2367; *see also Peterka*, 307 F. Supp. 2d at 1349 (holding that "extradition under the Czech Treaty . . . requires that the doctrine of dual criminality be satisfied . . .").

"[Dual] criminality refers to the characterization of the relator's criminal conduct insofar as it constitutes an offense under the laws of the respective states. . . . [It] is in effect a reciprocity requirement which is intended to ensure each of the respective states that they . . . can rely on

-12-

corresponding treatment, and that no state shall use its processes to surrender a person for conduct which it does not characterize as criminal." *United States v. Gallo-Chamorro*, 48 F.3d 502, 507 (11th Cir. 1995). The United States Supreme Court has described the requirement of dual criminality as follows: "[t]he law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the particular act charged is criminal in both jurisdictions." *Collins v. Loisel*, 259 U.S. 309, 312 (1922)

Thus, in order to satisfy the dual criminality requirement the conduct giving rise to the offenses for which Konečný was convicted must be criminal in both the Czech Republic and the United States. *Id.* at 311. Since Konečný has already been convicted in the Czech Republic of the offenses set forth in the extradition complaint, I need only determine whether the conduct underlying these offenses is proscribed in the United States.

*Insurance Fraud*

The conduct underlying the nine counts of insurance fraud for which Konečný was convicted in the Czech Republic is also proscribed in the United States. *See* Fla. Stat. § 817.234. Thus, I find that the requirement of dual criminality has been satisfied as to this offense.

*Instigating Another Person to be a Party to an Offense Involving the Abuse of Powers by a Public Official*

The conduct underlying the eleven counts of instigating another person to be a party to an offense involving the abuse of powers by a public official for which Konečný was convicted in the Czech Republic is also prohibited in the United States. *See* 18 U.S.C. § 2(a) (aiding and abetting); 18 U.S.C. § 201(c) (bribery of public officials and witnesses). Hence, I find that the requirement of dual criminality has been satisfied as to this offense.

*Assisting Another Person in Filing a False Insurance Claim*

The United States recognizes this offense.  *See* Fla. Stat. §§ 777.011 (aiding and abetting), 817.234 (false and fraudulent insurance claims).  Accordingly, I find that the requirement of dual criminality has been satisfied as to the offense of assisting another person in filing a false insurance claim.

*Abuse of Powers by a Public Official Concurrently With the Offense of Bribe-Taking*

The conduct underlying this offense is also proscribed in the United States.  *See* 18 U.S.C. § 201(b).  Thus, I find that the requirement of dual criminality has been satisfied as to the offense of abuse of powers by a public official concurrently with the offense of bribe-taking.

D.    Probable Cause.

As previously discussed, Konečný was convicted of the following offenses in violation of the Czech Criminal Code:  (1) insurance fraud (nine counts); (2) instigating another person to be a party to an offense involving the abuse of powers by a public official (eleven counts); (3) assisting another person in filing a false insurance claim (one count); and (4) abuse of powers by a public official concurrently with the offense of bribe-taking (one count).  Appleton Documents; Verdict; Resolution of the High Court in Prague; Arrest Warrant.  When a judgment of conviction has been entered by a foreign court, an independent determination of probable cause is not necessary.  Simply put, "a certified copy of a foreign conviction, obtained following *a trial* at which the defendant was present, is sufficient to sustain a judicial officer's determination that probable cause exists to extradite."  *Spatola v. United States*, 925 F.2d 615, 618 (2nd Cir. 1991) (emphasis added); *accord Sidali v. INS*, 107 F.3d 191, 196 (3rd Cir. 1997).  The present record contains a certified copy of the foreign conviction.

I must also determine whether Konečný is the person who committed the crimes. At the time of Konečný's arrest in the United States, he possessed a Florida identification card in the name Rostislav Konecny. The presiding judge of the Municipal Court in Prague provided a picture of Konečný and certified that the individual pictured is the individual who was convicted in the judge's court. Appleton Documents; Statement on Confirmation of Identity. I have compared the picture certified by the presiding judge of the Municipal Court in Prague with the individual who appeared before me, and I find that the individual arrested in the present case is the same individual who was convicted of the charged crimes.

### VI. CONCLUSION.

Accordingly, it is hereby **ORDERED** as follows:

1. The request for certification (Doc. No. 2) is **GRANTED** as to all charges for which extradition is sought;

2. The United States shall submit a proposed final order within ten (10) days from the date of this Order so that this matter may be certified to the Secretary of State of the United States of America, together with all formal extradition documents received into evidence, a certified copy of all testimony and evidence taken at the hearing and all memoranda of law filed on the issue of extradition, and all orders of the Court.

**DONE** and **ORDERED** in Orlando, Florida on this 25th day of July, 2005.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
United States Marshal
United States Attorney
Counsel for Defendant